My name is Paul Garrity and I represent Senate Arias. The brief that I filed on behalf of Mr. Arias raised a number of issues, but I would like to focus on what I think is the key issue is the failure to declare a mistrial and that dealt with the government's obtaining of a search warrant for a phone that was seized off of Mr. Arias to obtain a phone number from that phone, when in fact the government had already opened the phone and failed to disclose that to the district court judge. And it was only after the defense counsel in the district court indicated that he was going to recall the affiant in that case, Detective DeGioia, I'm sorry, that the government disclosed that in fact they had opened the phone previously and had obtained a number without disclosing that to the district court judge. And the phone number was of particular importance in this case because the phone was the only evidence linking Mr. Arias to Mr. Melchiona. How can you say that in light of all the audio recordings involving a conversation between the two of them? Isn't it an overstatement to say that was really the only evidence? Well, I mean the only concrete, indisputable evidence of a connection. There was testimony from Detective DeGioia that he had heard the voice of Mr. Arias when Mr. Arias was arrested, claimed that it was his opinion that the voice on the phone calls that he listened to was that of Mr. Arias. But that was open to attack and was subjective in nature, especially where that Detective DeGioia did not write a report documenting any such conversation with Mr. Arias when he was arrested. No other officer apparently documented that conversation. So the phone number was of particular importance because although the defense could attack the detective's opinion about the voice being the same, it was extremely difficult, in fact almost impossible, to attack the concrete connection with the phone number being in Mr. Arias' phone. And the government, as I say, only disclosed that they had previously searched the phone and knew then to obtain a search warrant when the defense notified the court and the government, I'm going to be calling back Detective DeGioia. And I guess to put some of the icing on the cake for the government in terms of how they somewhat misled the District Court Judge, the last witness that they called in a direct case was Detective Picardy and he was the one that testified about what was on the phone. And the government let stand testimony across examination that no searching of the phone had taken place prior to the search warrant. So are you arguing that as a sanction the mistrial should have been declared? I'm telling you, you're not arguing about the importance of the evidence. You seem more focused now on what you would say was misbehavior by the government. I think it's a combination of the two, Judge. I mean, the misconduct by the government in combination with the importance of the number should have warranted a mistrial. I'm not quite sure I understand. What would be the basis for making the misconduct relevant to the analysis? I understand that if there's a violation under evidentiary rule, then the government's got to explain why, you know, notwithstanding that it's not a harmful error. But I don't fully get, you know, it's not like you bring an outrageous conduct claim. No, Judge, I did not make an outrageous misconduct claim in my brief. So I don't really understand the relevance. And I go to the intentionality of the violation, but that still just leaves us with a harmless issue. I would ask an argument to you that it is a factor. It's not the major factor, but it's a factor to look at. With respect to what? That's what I'm not understanding. Whether there was harm? It's not relevant to whether there was harmful. Well, in some ways it lets the government have their cake and eat it, too. They can present to... No, I'm just trying to understand. That sounds like a sanction-type contention. And, Judge, that's not the main focus of my argument, but I'm asking you to consider that to some degree. Well, why, though? That's what I'm trying to understand. What legal basis would we have to provide to make the judgment that even though we think it was harmful, nonetheless, it should have been a mistrial? I just don't see that unless you've got some legal authority for that. Judge, I can't stand before you and say that I do have the legal authority. I just think in the context of this case and the way the evidence was obtained and not disclosed to the district court judge, it plays into the issue. But I think the main issue I wish to argue is that a mistrial should have been declared. The prejudice couldn't be eradicated because the jury was told here's concrete evidence of a tie. They were allowed to consider that evidence overnight. How significant is the fact that the other tie they would have had to your client was through the car? And the car being registered to your... The car was registered to Ms. Darius, that's correct. And that car was present at the home of the person that they're trying to tie him to. Occasionally it would go to that home, yes. So why would the phone number then be so much more significant than the fact that there's surveillance video and a testimony from a police officer identifying your client as the one getting out of the car? And I understand you can say that's subjective, like the voice analysis is subjective. But the presence of the car, what's the ground for disputing that the car is seen moving at that house, they have evidence of the car being there, and that car was registered to your client? The car doesn't indicate what's going on inside the house. Neither does the phone number. Well, the phone number is a much closer connection. There's no indication that Mr. Arias, when he was going into the home, was meeting up with Mr. Melchiona. So the number, I think, is the direct key contact. And if I read the transcript and understand the record correctly, the residence where Mr. Melchiona lived, there were other individuals living there. So the number was the contact. And the instruction given to the jury down below, I would submit, didn't eradicate prejudice. Why not? Because it was somewhat general in nature. It did refer to the exhibits. It did say to disregard the exhibits. He struck that evidence. He instructed the jury to disregard that evidence. And our standard of review is manifest abuse of discretion. I understand, Judge. I would say here that the instruction, although referring specifically to the exhibits, was somewhat general in nature with respect to the testimony. Did you object to that instruction? I would think the defendant wouldn't necessarily want to highlight the phone number. But you seem to be saying that the court was required not just to refer to evidence, but to specifically address that point. There was no objection, Judge, to answer your question. Okay. But I think rather than referring specifically, don't consider testimony on the number. It could have, the district court judge should have instructed the jury to disregard any testimony from Detective Picardi with respect to the phone. Because the exhibits, they were referenced by number. There wasn't any specific reference to a phone. Well, were you trial counsel? I was not, Judge. It would seem to me that not making an objection was a perfectly reasonable strategy choice by trial counsel. I understand, Judge, that trial counsel may not have wanted to highlight the number in the jurors' minds, but it could have been done in a way with respect to a particular detective phone that could have helped in some ways eradicate the prejudice. But I'm standing before you saying there was no way to eradicate the prejudice here because that number was the only direct concrete link between Mr. Arias and Mr. Melchiona. Okay. Thank you.  Good morning. May it please the Court? My name is Demetra Lambros, and I'm here for the United States. And to answer your point, Judge Lynch, the instruction was actually invited by defense counsel. Not only was there not an objection, he asked for the instruction, and it was actually quite specific. It was the judge to the jury, I am striking those exhibits. I'm instructing you to disregard them, to put them out of your mind. Your verdict may not be based even in part on those exhibits or on any testimony that surrounded those exhibits. I'm sorry. Did defense counsel suggest that language to the Court? The defense counsel didn't suggest that exact language. And defense counsel did ask for a mistrial, yes. But alternatively, he asked for an instruction, and defense counsel very much wanted the included piece, which was that the testimony that accompanied those exhibits should also be struck. So, yes, defense counsel was very much part of this strategy here. And as Judge Lynch, you also mentioned this claim faces two really insurmountable obstacles, the standard of review and the overwhelming evidence of Arias' guilt. When the district court's finding that this evidence was improperly admitted, it struck it. And that's actually exactly what this court has said it should do. A mistrial is only a last resort, appropriate only when the prejudice is actually, where the jury's exposure to the evidence is not curable. And that is just not what we have in this case. In fact- Counsel, doesn't the- I know we place a lot of reliance on these curative instructions, but the curative instruction was not given until the next day. Doesn't the delay in giving it lessen its effectiveness in getting the prescribed evidence out of the mind of the jurors? They had all that time to be aware of it without any indication that it was problematic. Well, overnight is not a very long time. And, in fact, it was given the next morning. This court, in a number of other cases, has found lots longer time to still not be a problem. But, again, one number on one phone was really inconsequential in light of the mountain of evidence against Mr. Arias, which included over 50 calls and texts played to the jury of him arranging drug deals with Mr. Melchionda and following up on drug deals. They had photographs- Excuse me. Photograph surveillance of him getting out of the car. And, of course, there were the 78 bags of heroin that were found on him when he was arrested. This was not a close case. One number on one phone would not have made any difference. In fact, he got something of a windfall under this ruling because, typically, under Franks, if there's been a problem with the Warren affidavit, if there's been an omission, you actually put the information back into the affidavit, evaluate it, and decide whether or not there's still probable cause. The court didn't do that. But if it had, it would have seen that that affidavit also included a raft of those phone calls between them, described that Agent Jacoya recognized Arias' voice, and also described a lot of that surveillance. So, in fact, the district court would have been perfectly within its right not to strike the evidence at all. What was the basis for his testimony of recognition of the voice? What was the nature of his relationship with the defendant that allowed him to indicate that he recognized that voice? There were a couple of things. First of all, he had listened to over 100 of these conversations, and his voice, Mr. Arias' voice, is actually quite distinct. So he kept hearing them. And then, oftentimes, Mr. Melchionda referred to him on many of those calls as Senny or Sarnia. So we are at Sarnia. I'm sorry, but I don't think that's responsive. You can say the transcripts themselves use the name, but the question was, how did the witness recognize the name? And there is, when he arrested him, he talked to Mr. Arias, and he heard his voice, and he could recognize that that voice was the same one that was on the intercepts, and also that Mr. Melchionda had referred to him. And so he knew who he was at that point. If there are no further questions? When you say that Sir Graham's video would have showed, did it show his face? It showed his face. It showed his face. So they're photographs. So they saw his face. They knew that he was someone who was being referred to as Senny. Then, in fact, pulled him over, got his driver's license, so they were able to identify him then. And then when Agent Dekoya, who had listened to all those conversations, arrested him, he spoke with him and also recognized his voice. Thank you. Thank you both.